**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **LANG VO TRAN, IDOC # R04817,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )    **CIVIL NO. 09-302-GPM** |
| | ) |
| **ILLINOIS DEPARTMENT OF** | ) |
| **CORRECTIONS, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

## I. INTRODUCTION

Plaintiff Lang Vo Tran, a prisoner in the custody of the Illinois Department of Corrections ("IDOC") who currently is serving a sentence of sixteen years' imprisonment at the Pinckneyville Correctional Center ("Pinckneyville") for home invasion and aggravated battery, brings this action pro se pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights by persons acting under color of state law. As will be discussed in more detail presently, Tran claims that he has been unlawfully denied adequate medical care by IDOC personnel, in violation of Tran's Eighth Amendment rights. Currently this matter is before the Court on a Report and Recommendation of United States Magistrate Judge Donald G. Wilkerson (Doc. 55). In the Report and Recommendation Magistrate Judge Wilkerson offers a proposed disposition of the following motions: a motion for summary judgment brought by Defendant Sylvia Mahone (Doc. 27); a motion for summary judgment brought by Defendants Adrian D. Feinerman and Mikhail Magdel (Doc. 34); and a motion for summary judgment brought by Defendant Lisa Gales (Doc. 37). Objections to

Magistrate Judge Wilkerson's Report and Recommendation have been filed by Tran (Doc. 58) and by Defendant Alfonso David (Doc. 62). Having considered the matter carefully, the Court now rules as follows.

## II. BACKGROUND

By way of background to this case, Tran claims that he suffers from a hernia and that IDOC medical personnel have been deliberately indifferent to Tran's serious medical needs, in violation of Tran's Eighth Amendment rights. It appears from the record that between January 18, 2002, and June 24, 2008, Tran was incarcerated at the Menard Correctional Center ("Menard"), where he received medical treatment from Feinerman, Magdel, and Gales. Between June 25, 2008, and October 7, 2008, Tran was incarcerated at the Pontiac Correctional Center ("Pontiac"), where he received medical treatment from Mahone. Between October 8, 2008, and October 20, 2009, Tran was incarcerated at the Shawnee Correctional Center ("Shawnee"), where he received medical treatment from David. Finally, since October 21, 2009, Tran has been incarcerated at Pinckneyville, where he has received medical treatment from Defendant Olukunle Obadina, who recently was dismissed from this case by reason of Tran's failure to effect service of process on him. Mahone, Feinerman, Magdel, and Gales seek summary judgment as to Tran's Eighth Amendment claims against them by reason of Tran's failure to exhaust his administrative remedies, as is required, of course, under 42 U.S.C. § 1997e(a).

It appears from the record, specifically, an affidavit of Sherry Benton, chairperson of the IDOC's Administrative Review Board ("ARB"), and the documents attached to the affidavit, that Tran made two attempts to grieve his complaints concerning the medical treatment he received for his hernia. First, while incarcerated at Shawnee, Tran sent a letter to the ARB dated

October 12, 2008, in which Tran claimed that he was denied adequate medical treatment for his hernia during his incarceration at Menard and Pontiac. *See* Doc. 34-1 at 5. On October 30, 2008, the ARB returned Tran's letter to him and advised Tran that if he were having difficulty in getting medical treatment for his hernia at Shawnee, he should file a grievance. *See id.* at 4. Tran's second attempt to grieve his complaints about the medical care he was receiving for his hernia occurred on December 8, 2008, when Tran filed a grievance claiming that he had been denied adequate medical care for his hernia while incarcerated at Menard and Pontiac and that at Shawnee David had denied Tran's request for surgery or at least pain medication for his hernia. *See* Doc. 34-1 at 8-9. On December 10, 2008, a Grievance Counselor at Shawnee reviewed Tran's grievance and on December 24, 2008, Dennis Daymon, a Grievance Officer at Shawnee, recommended denial of Tran's grievance. *See id.* at 7, 8. On January 12, 2009, Tran's grievance was denied by the warden or Chief Administrative Officer ("CAO") at Shawnee. *See id.* at 7. On February 1, 2009, Tran appealed to the ARB from the CAO's decision, but for reasons that remain unclear the appeal did not reach the ARB until March 19, 2009. *See id.* Because Tran's appeal was received more than thirty days after the CAO's decision, the ARB denied the appeal as untimely. *See id.* at 6.

On December 15, 2010, Magistrate Judge Wilkerson conducted a hearing as to the issue of exhaustion of administrative remedies in this case. At the hearing, Tran stated that he took all necessary steps to exhaust as to the grievance he filed on December 8, 2008. He testified that he appealed the decision of the CAO on February 1, 2009, and placed the appeal in the mail system at Shawnee the same day. Tran was unable to explain why the ARB did not receive his appeal until March 19, 2009. After the hearing Magistrate Judge Wilkerson issued the Report and

Recommendation that currently is before the Court. In the Report and Recommendation Magistrate Judge Wilkerson finds, based upon the evidence in the record and the testimony presented at the hearing on December 15, 2010, that Tran failed to exhaust his administrative remedies as to the grievance he attempted to make on October 12, 2008, inasmuch as Tran failed to submit the grievance to the ARB with the proper forms. With respect to the grievance Tran filed on December 8, 2008, Magistrate Judge Wilkerson finds again that Tran had failed to exhaust his administrative remedies inasmuch as Tran's appeal from the CAO's denial of the grievance was untimely because the appeal was received by the ARB more than thirty days after the date of the CAO's decision. However, Magistrate Judge Wilkerson finds further that the failure to exhaust was innocent. The evidence in the case is that Tran properly filed the December 2008 grievance by giving it to the Grievance Counselor. Additionally, Magistrate Judge Wilkerson credits Tran's testimony that he made a timely appeal from the CAO's denial of the grievance by placing the appeal in the mail system at Shawnee on February 1, 2009. Magistrate Judge Wilkerson acknowledges that Tran is unable to explain why his appeal did not reach the ARB until March 19, 2009, and Magistrate Judge Wilkerson is careful to point out that there is no evidence, nor any inference to be drawn, that IDOC personnel in any way interfered with Tran's appeal. However, in Magistrate Judge Wilkerson's view, the evidence is that Tran did everything in his power to perfect a timely appeal, and therefore Tran's failure to exhaust administrative remedies as to his December 2008 grievance should be excused as innocent.

In his Report and Recommendation Magistrate Judge Wilkerson goes on to point out that, because in the December 2008 grievance Tran complained of alleged denials of medical care by Feinerman, Magdel, Gales, and Mahone that occurred at prisons other than the prison where Tran

was incarcerated when he filed the grievance, under IDOC regulations Tran was required to grieve the alleged denials of medical care by Feinerman, Magdel, Gales, and Mahone directly to the ARB. Because Tran did not do so, Magistrate Judge Wilkerson recommends that summary judgment be granted as to Tran's Eighth Amendment claims against Feinerman, Magdel, Gales, and Mahone by reason of Tran's failure to exhaust his administrative remedies as to those claims. With respect to Tran's claim of receiving inadequate medical care at Shawnee, Magistrate Judge Wilkerson, as discussed, finds that Tran's failure to exhaust administrative remedies as to his December 2008 grievance was innocent and should be excused. Accordingly, Magistrate Judge Wilkerson finds also that Tran is entitled to maintain a claim under 42 U.S.C. § 1983 against David for alleged violations of Tran's Eighth Amendment rights during Tran's confinement at Shawnee. However, Magistrate Judge Wilkerson points out further, because Tran's grievance concerning medical care at Shawnee was filed on December 8, 2008, under IDOC regulations Tran may maintain a Section 1983 claim only as to incidents that occurred at Shawnee during the sixty days that preceded the filing of the grievance.[1] As noted, both Tran and David have filed objections to Magistrate Judge Wilkerson's Report and Recommendation, and Gales has responded to Tran's objection to the Report and Recommendation. In light of the objections to Magistrate Judge Wilkerson's Report and Recommendation, the Court has undertaken de novo review of the Report and Recommendation and rules as follows.

---

1. In addition, because there is no evidence that Tran ever attempted to grieve alleged denials of medical care by Obadina during Tran's incarceration at Pinckneyville, Magistrate Judge Wilkerson is of the view that Tran's Eighth Amendment claims against Obadina should be dismissed for failure to exhaust administrative remedies. The Court need not decide this point because, as already has been noted, Obadina has been dismissed from this case by reason of Tran's failure to effect service of process on him. However, were Obadina still a party to this case, the Court would concur in Magistrate Judge Wilkerson's view.

# III. Analysis

In general, a federal district judge may designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to the district judge proposed findings of fact and recommendations for the disposition of a motion for summary judgment. *See* 28 U.S.C. § 636(b)(1)(A)-(B). A magistrate judge so designated "shall file his proposed findings and recommendations . . . with the court and a copy shall forthwith be mailed to all parties." 28 U.S.C. § 636(b)(1)(C). The statute provides further,

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1). *See also* Fed. R. Civ. P. 72(b); SDIL-LR 73.1(b); *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). In conducting de novo review of a magistrate judge's report and recommendation, a district judge "is not required to conduct another hearing to review the magistrate judge's findings or credibility determinations." *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995). However, the district judge must give "fresh consideration to those issues to which specific objections have been made." *Wasserman v. Purdue Univ.*, 431 F. Supp. 2d 911, 914 (N.D. Ind. 2006). *See also* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3070.2 (2d ed. 1987 & Supp. 2010) (the "de novo determination" required under 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure is "not meant to compel the [district] judge

to conduct a new hearing" and instead means that the district judge must "give fresh consideration to those issues to which specific objections have been made") (collecting cases). "[I]f following a review of the record the district court is satisfied with the magistrate judge's findings and recommendations it may in its discretion treat those findings and recommendations as its own." *Goffman*, 59 F.3d at 671.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, generally at any time until thirty days after the close of discovery in a case, "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a). The rule provides further that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." *Id*. Under Rule 56, "[a] party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the . . . presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1)(A)-(B). The rule provides also that "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). With respect to affidavits and declarations, the rule provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In considering a summary judgment motion, a court must draw all reasonable inferences in the light most favorable to the non-moving party. *See Miller v. Herman*, 600 F.3d 726, 733 (7th Cir. 2010); *Smith v. Severn*, 129 F.3d 419, 425 (7th Cir. 1997).

On summary judgment a court may not make credibility determinations or weigh the evidence, because these are tasks for a factfinder. *See Morfin v. City of E. Chicago*, 349 F.3d 989, 999 (7th Cir. 2003); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). "Our role is not to weigh the evidence in search of a preponderance as would a jury, but it is instead the more restrictive function of determining if the evidence in support of the verdict is *substantial*; a mere scintilla of supporting evidence will not suffice." *Futrell v. J.I. Case*, 38 F.3d 342, 346 (7th Cir. 1994) (quoting *Perfetti v. First Nat'l Bank of Chicago*, 950 F.2d 449, 450 (7th Cir. 1991)) (emphasis in original). Finally, in evaluating a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010) (quoting *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)).

Turning then to the issue of exhaustion of administrative remedies, 42 U.S.C. § 1997e provides, in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). *See also Thornton v. Snyder*, 428 F.3d 690, 693-94 (7th Cir. 2005). The purpose of the exhaustion requirement, the Supreme Court of the United States has instructed, is to afford "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525 (2002). *See also Smith v. Zachary*, 255 F.3d 446, 450 (7th Cir. 2001) ("The exhaustion requirement provides the prison system with prompt notice of problems. This, of course, is preferable to a system

where the prison might get its first notice of a claim in a lawsuit filed several years later just before the running of a statute of limitations."). Moreover, the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. In other words, under Section 1997e(a) exhaustion of administrative remedies by a prisoner suing for an alleged violation of his or her civil rights is "mandatory" and is required for "any suit challenging prison conditions[.]" *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Of particular relevance to this case, in which, as discussed, Tran complains of the medical care he has received while in IDOC custody, "complaints about medical treatment in prison are complaints about 'prison conditions.'" *Witzke v. Femal*, 376 F.3d 744, 751 (7th Cir. 2004). The United States Court of Appeals for the Seventh Circuit has held that exhaustion of administrative remedies by a prisoner is a precondition to bringing suit for an alleged violation of the prisoner's constitutional rights under 42 U.S.C. § 1983, regardless of the apparent futility of pursuing an administrative remedy, whether money damages are sought as a tangential remedy, and notions of judicial economy. *See Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535-37 (7th Cir. 1999). Importantly, exhaustion of administrative remedies means "proper exhaustion," that is, a prisoner must file a timely grievance utilizing the procedures put in place by the prison system. *Woodford*, 548 U.S. at 90. Said differently, a prisoner must "properly take each step within the administrative process[.]" *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). Furthermore, failure to exhaust administrative remedies will bar a prisoner's lawsuit challenging the conditions of his or her confinement even if exhaustion is accomplished during the pendency of the prisoner's case. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

Failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) is "an affirmative defense that the defendants have the burden of pleading and proving." *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Salas v. Wisconsin Dep't of Corr.*, 493 F.3d 913, 922 (7th Cir. 2007); *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002); *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). As the language of the statute makes clear, in order to establish that a prisoner plaintiff failed to exhaust administrative remedies, a defendant must first demonstrate that an administrative remedy was available to the prisoner. To satisfy this requirement, the defendant must show that the agency in question had authority to provide "some redress" for the wrong alleged by the prisoner. *Booth v. Churner*, 532 U.S. 731, 736 (2001). "Without the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust." *Id*. at 736 n.4. *See also Larkin v. Galloway*, 266 F.3d 718, 722 (7th Cir. 2001) ("[E]xhaustion would not be required if . . . the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint[.]"). *Cf. McCoy v. Gilbert*, 270 F.3d 503, 510 (7th Cir. 2001) ("The exhaustion requirement applies whenever there is some administrative process remaining at the prisoner's disposal."). Thus, if an administrative remedy is not available to a prisoner claiming a violation of his or her constitutional rights, the prisoner is not required to pursue an administrative remedy before filing suit. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (quoting 42 U.S.C. § 1997e(a)) ("If administrative remedies are not 'available' to an inmate, then the inmate cannot be required to exhaust."); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (a prisoner "must exhaust only those administrative remedies that are available to him").

The administrative remedies available to prisoners in IDOC custody are contained in IDOC regulations codified in Title 20 of the Illinois Administrative Code. *See* Ill. Admin. Code tit. 20, § 504.800 *et seq*. The regulations first require a prisoner to speak with a Grievance Counselor about a complaint. *See* Ill. Admin. Code tit. 20, § 504.810(a). If the Grievance Counselor does not resolve the issue, the prisoner must file a grievance form directed to the Grievance Officer at the prison where the prisoner is incarcerated within sixty days of the incident giving rise to the grievance. *See id*. The grievance form must

> contain factual details regarding each aspect of the [prisoner's] complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude [a prisoner] from filing a grievance when the names of individuals are not known, but the [prisoner] must include as much descriptive information about the individual as possible.

Ill. Admin. Code tit. 20, § 504.810(b). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the [CAO] . . . . [who] shall advise the [prisoner] of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." Ill. Admin. Code tit. 20, § 504.830(d). If the prisoner is not satisfied with the CAO's response, he or she can then appeal to the Director of the IDOC through the ARB. "If, after receiving the response of the [CAO], the [prisoner] still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the [CAO's] decision should be attached." Ill. Admin. Code tit. 20, § 504.850(a). Under the regulation, "[t]he [ARB] shall submit to the Director a written report of its findings and recommendations." Ill. Admin. Code tit. 20, § 504.850(e). "The Director shall review

the findings and recommendations of the [ARB] and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The [prisoner] shall be sent a copy of the Director's decision." Ill. Admin. Code tit. 20, § 504.850(f).

Where the issue of exhaustion of administrative remedies is contested, the Seventh Circuit Court of Appeals has cautioned that a district court "must not proceed to render a substantive decision until it has first considered [42 U.S.C.] § 1997e(a). The statute gives prisons and their officials a valuable entitlement – the right *not* to face a decision on the merits – which the courts must respect if a defendant chooses to invoke it." *Perez*, 182 F.3d at 536 (emphasis in original). Correspondingly, where exhaustion has been raised as a defense, issues relating to exhaustion are to be resolved by a court before proceeding to the merits. *See Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008). In *Pavey* the court explained the sequence to be followed if exhaustion is contested. First, a district judge should conduct a hearing on exhaustion and permit whatever discovery relating to exhaustion that the judge deems appropriate. *See id*. at 742. If the district judge determines that a prisoner did not exhaust administrative remedies, the judge must then determine whether the prisoner should be required to exhaust or whether, if the failure to exhaust was "innocent . . . as where prison officials prevent a prisoner from exhausting his remedies," the prisoner must "be given another chance to exhaust[.]" *Id*. In the latter scenario, an "innocent" failure to exhaust, the *Pavey* court added the proviso that leave to exhaust should be given only if "there exist remedies that [the prisoner] will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround[.]" *Id*. If, however, the district judge finds that "the failure to exhaust was the prisoner's fault," then "the case is over." *Id*. "If and when the judge determines that the prisoner has properly

exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits[.]" *Id.* Further, "if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies." *Id.* Implicit in the holding of *Pavey* is the view that any discovery in a case prior to resolution of the issue of exhaustion should be related solely to the exhaustion issue. *See Aguirre v. Witek*, No. 08-C-1110, 2010 WL 1292161, at *1 (E.D. Wis. Mar. 30, 2010) (citing *Pavey*, 544 F.3d at 742) (noting that, under *Pavey*, discovery in advance of a decision about exhaustion of administrative remedies "relat[es] to exhaustion . . . and only to exhaustion"). Although the court in *Pavey* included a hearing as one of the steps in determining whether the plaintiff had satisfied the exhaustion requirement, "there is no reason to conduct an evidentiary hearing" in a "situation [where] there are no disputed facts regarding exhaustion, only a legal question." *Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009).

With respect to the grievance that Tran sought to file on October 12, 2008, it is the case that, because Tran was incarcerated at Shawnee at the time, he was required to submit any grievance that he had concerning the medical care he had received from Feinerman, Magdel, and Gales at Menard and from Mahone at Pontiac directly to the ARB. A regulation promulgated by the IDOC titled "Direct Review by [the ARB]" provides, in relevant part, that a prisoner in IDOC custody "shall submit grievances directly to the [ARB] when grieving . . . issues except personal property issues that pertain to a facility other than the facility where the [prisoner] is currently assigned." Ill. Admin. Code tit. 20, § 504.870(a)(4). *See also Cannon v. Washington*, 418 F.3d 714, 716-17 (7th Cir. 2005) (noting that IDOC regulations required a prisoner incarcerated at Menard who was

complaining of conduct by guards at the Centralia Correctional Center and Shawnee to write directly to the ARB). The regulation provides further that "[t]he [ARB] shall review and process the grievance in accordance with [Ill. Admin. Code tit. 20, §] 504.850." Ill. Admin. Code tit. 20, § 504.870(b). In general, of course, under IDOC regulations a written grievance must be made "on a grievance form that shall be made available in all living units." Ill. Admin. Code tit. 20, § 504.810(a). Here the undisputed evidence of record is that the grievance Tran attempted to bring on October 12, 2008, was not on a regulation IDOC grievance form and instead was in the form of a letter to the ARB complaining about the medical care that he, Tran, had received at Menard and Pontiac. Accordingly, the ARB was within its rights to decline to entertain the grievance. As the Seventh Circuit Court of Appeals has instructed, "a prisoner, in order to satisfy the exhaustion requirement of [42 U.S.C.] § 1997e, must complete the administrative process 'by following the rules the state has established for that process.'" *Dixon v. Page*, 291 F.3d 485, 491 (7th Cir. 2002) (quoting *Pozo*, 286 F.3d at 1023). Naturally, it is within the discretion of IDOC officials to excuse a prisoner's non-compliance with the IDOC's administrative grievance process. *See, e.g., Riccardo v. Rausch*, 375 F.3d 521, 523-24 (7th Cir. 2004) (noting that an IDOC prisoner's grievance was untimely, but that IDOC officials nonetheless resolved the grievance on its merits). *Cf.* Ill. Admin. Code tit. 20, § 504.810(a) (providing for consideration of untimely grievances filed by IDOC prisoners "if [a prisoner] can demonstrate that a grievance was not timely filed for good cause"). In this case, however, the ARB did not excuse Tran's non-compliance with the IDOC's grievance procedure. Accordingly, Magistrate Judge Wilkerson correctly found that Tran failed to exhaust his administrative remedies with respect to the complaints contained in Tran's October 2008 grievance.

With respect to the grievance Tran filed on December 8, 2008, Magistrate Judge Wilkerson correctly found that, because at the time the grievance was filed Tran was incarcerated at Shawnee, then, as discussed, IDOC regulations required Tran to bring his complaints regarding medical care that Tran received at Menard and Pontiac directly to the ARB. Tran did not do so, instead bringing his complaints about the medical care he had received from Feinerman, Magdel, and Gales at Menard and from Mahone at Pontiac in a grievance filed with the Grievance Officer at Shawnee. Thus, Tran failed to exhaust his administrative remedies with respect to his claims against Feinerman, Magdel, Gales, and Mahone. With respect to Tran's claim against David, as discussed, Tran was required to appeal from the denial of his December 2008 grievance to the ARB within thirty days of denial of the grievance. *See* Ill. Admin. Code tit. 20, § 504.850(a). As discussed, Tran's grievance against David was denied by the CAO at Shawnee on January 12, 2009, but Tran's appeal from the denial was not received by the ARB until March 19, 2009. However, as will be discussed in more detail presently in connection with David's objection to Magistrate Judge Wilkerson's Report and Recommendation, the Court believes that Magistrate Judge Wilkerson correctly found that Tran took all available steps to perfect a timely appeal from the denial of his December 2008 grievance to the ARB. Therefore, Tran's failure to exhaust his administrative remedies with respect to his claim against David was, as Magistrate Judge Wilkerson found, innocent and should be excused. However, as Magistrate Judge Wilkerson also found correctly, Tran's claim against David is limited to incidents that occurred at Shawnee within sixty days before Tran's grievance against David was filed on December 8, 2008. Under IDOC regulations, "[a] grievance shall be filed within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance." Ill. Admin. Code tit. 20, § 504.810(a). Thus, the Court will allow

Tran to proceed on claims against David that arose at Shawnee within sixty days before the filing

of Tran's December 2008 grievance.[2]

The Court turns next to Tran's objection to Magistrate Judge Wilkerson's Report and

Recommendation.  In his objection, Tran argues that his failures to exhaust administrative remedies

should be excused by reason of Tran's inability to speak and write English.  According to Tran, due

to his unfamiliarity with English he has been unable to pursue administrative remedies concerning

the medical care he has received at Menard, Pontiac, and Pinckneyville.  Tran claims that it was only

because he encountered prisoners at Shawnee who were willing to help him file grievances that he

was able to pursue administrative remedies during his incarceration at that prison.  Concerning

prisoners in IDOC custody who lack proficiency in English, the IDOC grievance procedure provides

as follows:

> c) Staff assistance shall be available as requested by those [prisoners] who cannot
> prepare their grievances unaided as determined by institutional staff.
> 1) All [prisoners] shall be entitled to file grievances regardless of their disciplinary
> status or classification.
> 2) Each facility shall take reasonable steps to ensure that the grievance procedure is
> accessible to [prisoners] who are impaired, disabled, or unable to communicate in the
> English language.
> d) [Prisoners] shall be informed of the grievance procedure at the admitting facility
> and may request further information regarding the procedure from their counselors.
> 1) The written procedure shall be available to all [prisoners].
> 2) [A prisoner] unable to speak or read the English language may request that the
> procedure be explained in the individual's own language.

Ill. Admin. Code tit. 20, § 504.810.  In light of these provisions governing the IDOC grievance

---

2.     As to Tran's claim against Obadina, as noted the Court already has dismissed Obadina from this
case, Obadina having retired and moved to Africa without leaving an address where he can be served
with process in this case.  Had Obadina not been dismissed from the case for that reason, however,
the Court certainly would dismiss Obadina due to Tran's failure to exhaust his administrative
remedies as to Obadina.  There is no proof that Tran ever filed a grievance about Obadina during
Tran's incarceration at Pinckneyville.

procedure, an administrative remedy is "available" to Tran within the meaning of 42 U.S.C. § 1997e(a) despite Tran's lack of competency in English. *See Lagalbo v. Raemisch*, No. 08-cv-00997, 2010 WL 2900370, at *3 & n.2 (E.D. Wis. July 20, 2010) (quoting Wis. Admin. Code DOC § 310.06) (an administrative remedy is available to Wisconsin state prisoners under regulations of the Wisconsin Department of Corrections stating with respect to the prisoner complaint procedure that the agency "shall make appropriate provisions for non-English speaking, impaired or handicapped inmates").

A prisoner's lack of familiarity with English may excuse a failure to exhaust administrative remedies where the prisoner is given insufficient assistance by prison officials to enable the prisoner to satisfy the prison grievance process. *See, e.g., Bojorquez v. Fitzsimmons*, No. 07-1001, 2009 WL 790950, at *5 (C.D. Ill. Mar. 23, 2009) (a prisoner who did not speak English and who "apparently was provided no help . . . in filing a grievance" by prison officials exhausted available remedies because he provided as much information as possible on grievance forms); *Abel v. Pierson*, Civil No. 05-264-GPM, 2008 WL 509466, at *4 (S.D. Ill. Feb. 13, 2008) (denying summary judgment on the issue of whether an IDOC prisoner who spoke only Spanish failed to exhaust administrative remedies where "crucial questions regarding whether plaintiff was given appropriate assistance in completing a grievance and navigating the appropriate administrative remedies remain"). Here, however, there is no evidence that Tran ever sought the assistance of prison officials, such as a Grievance Counselor or Grievance Officer, in filing a grievance. Instead it appears that Tran elected to rely upon the advice of jailhouse lawyers from among his fellow prisoners. It may well be that Tran felt more comfortable seeking advice from other prisoners instead of from prison officials, but this is not an excuse for failing to exhaust administrative

remedies. *See Rodriguez Ramos v. Smith*, No. 04-CV-0249, 2005 WL 3054291, at **6-7 (3d Cir. Nov. 14, 2005) (an illiterate prisoner who did not speak English failed to exhaust his administrative remedies, where the prisoner's failure to file administrative appeals was the result of relying upon the advice of his attorneys; under pertinent prison regulations, the prisoner should have sought the assistance of the warden of the prison where he was confined or other prison officials, who were under an official duty to help him). In addition, the Court notes that, whatever disabilities Tran may possess with respect to English proficiency, he plainly is able to make himself understood to English-speaking persons, as is amply evidenced by the record of this case. Tran's submissions to the Court are in English and, although written by a person or by persons other than Tran, commonly are lucid and well-argued, being in fact among the better pro se submissions the Court has received in a prisoner case. Given Tran's ability to make himself understood to the English-speaking prisoners who write his papers in this matter, it is reasonable to conclude that Tran could have pursued administrative remedies despite his lack of proficiency in English. *See Sosa v. Cleaver*, No. 3:03CV1707DJSTPS, 2005 WL 1205119, at *3 (D. Conn. May 18, 2005) (finding that "the lack of a Spanish version of the inmate handbook is not a special circumstance in this case that would justify [the plaintiff's] failure to file a grievance" when "all of the pleadings in this case have been submitted in English."); *Castano v. Nebraska Dep't of Corr. Servs.*, No. 4:98CV3007, 1999 WL 1442028, at *3 (D. Neb. June 11, 1999) (Spanish-speaking prisoners who lacked English proficiency failed to exhaust administrative remedies where, despite their language disabilities, they were able to communicate with other prisoners so as to be able to correspond in English with a parole board and a doctor). The Court overrules Tran's objection to Magistrate Judge Wilkerson's Report and Recommendation.

The Court turns finally to David's objection to Magistrate Judge Wilkerson's Report and Recommendation. As already has been discussed, Magistrate Judge Wilkerson finds that although Tran's appeal from the denial of his grievance against David was received by the ARB over thirty days after the denial of the grievance by the CAO at Shawnee, Tran took all available steps to bring a timely appeal from the denial of the grievance. Thus, Magistrate Judge Wilkerson finds further, Tran's failure to exhaust administrative remedies as to David is innocent and should be excused, although, as also has been discussed, Magistrate Judge Wilkerson concludes that Tran's claim against David is limited to incidents that occurred at Shawnee in the sixty days preceding the filing of Tran's grievance against David on December 8, 2008. David objects to Magistrate Judge Wilkerson's Report and Recommendation on the grounds that Tran never filed a written response to the summary judgment motions brought in this case, so that the motions should be deemed to be admitted. David argues also that "the only reasonable explanation" for the fact that Tran's appeal from the denial of his December 2008 grievance was late "is that [Tran] failed to mail his appeal in a timely manner." Doc. 62 at 3 ¶ 11. With respect to Tran's failure to respond in writing to the summary judgment motions in this case, it is true that under the Local Rules of Court a failure to respond to a motion may be deemed in the Court's discretion to be an admission of the merits of the motion. *See* SDIL-LR 7.1(c). However, a failure to comply with a local rule is a disfavored ground for dismissal of a case. *See Westefer v. Snyder*, Civil Nos. 00-162-GPM, 00-708-GPM, 2010 WL 235003, at *1 n.1 (S.D. Ill. Jan. 15, 2010). Also, David never in fact moved for summary judgment against Tran and, in any event, because Magistrate Judge Wilkerson conducted a *Pavey* hearing on the issue of exhaustion, it was proper for him to permit Tran to respond orally to the motions at the hearing, a procedure consistent with the familiar principle that courts are to extend

a degree of solicitude to pro se litigants. *See Kelly v. Null*, Civil Nos. 07-339-GPM, 08-322-GPM, 2009 WL 4065040, at *1 (S.D. Ill. Nov. 23, 2009) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

With respect to the matter of whether Tran timely mailed his appeal to the ARB, Magistrate Judge Wilkerson credited Tran's testimony at the *Pavey* hearing that Tran mailed the appeal on February 1, 2009, within thirty days after the denial of Tran's grievance by the CAO at Shawnee on January 12, 2009, and, as discussed, it is not the Court's business at this juncture to second-guess Magistrate Judge Wilkerson's credibility determinations. In this connection the Court notes that Tran's notice of appeal from the decision of the CAO at Shawnee in fact is dated February 1, 2009, furnishing some evidence that Tran did indeed mail the appeal on that date. *See* Doc. 34-1 at 7. The evidence of record is that Tran took all steps within his power to perfect a timely appeal but that, for reasons beyond Tran's control, the appeal reached the ARB outside the thirty-day deadline. On similar facts, the Seventh Circuit Court of Appeals has found that a prisoner exhausted his administrative remedies. *See Dole v. Chandler*, 438 F.3d 804, 807-08, 811-12 (7th Cir. 2006) (citing *Brengettcy v. Horton*, 423 F.3d 674 (7th Cir. 2005)) (holding that a prisoner who put his administrative appeal from a denial of a grievance in the chuckhole in the door of his cell and whose appeal was removed from the chuckhole by a guard, but whose appeal nevertheless failed, for unknown reasons, to reach the ARB, had exhausted his administrative remedies because he "had done all that is reasonable to exhaust" and any error in handling the appeal undoubtedly was that of prison officials). Mistakes happen, and the Court certainly is not suggesting any deliberate wrongdoing by IDOC personnel in connection with Tran's appeal. Nonetheless, the Court believes that Magistrate Judge Wilkerson is correct that Tran's failure to exhaust his administrative remedies

as to David was innocent. There do not appear to be any further administrative remedies that the IDOC will permit Tran to exhaust, as the ARB already has found that Tran's appeal was untimely and refused to entertain it. Therefore the Court will deem Tran's claim against David to be exhausted and allow Tran to proceed on his claim against David, subject to the limitations set out by Magistrate Judge Wilkerson in his Report and Recommendation. *See Pavey*, 544 F.3d at 742. As to Tran's claims against Feinerman, Magdel, Gales, and Mahone, those claims will be dismissed without prejudice for failure to exhaust administrative remedies. *See Ford*, 362 F.3d at 401 ("We . . . hold that *all* dismissals under [42 U.S.C.] § 1997e(a) should be without prejudice.") (emphasis in original).

## IV. Conclusion

The Report and Recommendation of Magistrate Judge Wilkerson (Doc. 55) is **ADOPTED**. The objections to the Report and Recommendation filed by Tran (Doc. 58) and by David (Doc. 62) are **OVERRULED**. The motion for summary judgment brought by Mahone (Doc. 27), the motion for summary judgment brought by Feinerman and Magdel (Doc. 34), and the motion for summary judgment brought by Gales (Doc. 37) are **GRANTED**, and Tran's claims against Mahone, Feinerman, Magdel, and Gales are **DISMISSED without prejudice**. Tran may proceed on his claim against David under 42 U.S.C. § 1983 for incidents that occurred at Shawnee during the sixty-day period preceding December 8, 2008.

**IT IS SO ORDERED.**

DATED: March 1, 2011

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge