IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LANG VO TRAN, IDOC # R04817, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CIVIL NO. 09-302-GPM |
| | ) |
| ILLINOIS DEPARTMENT OF CORRECTIONS, et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This matter is before the Court on a motion for summary judgment brought by Defendant Alfonso David (Doc. 82). Plaintiff Lang Vo Tran, a prisoner in the custody of the Illinois Department of Corrections ("IDOC") who currently is serving a sentence of sixteen years' imprisonment for home invasion and aggravated battery, brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights by persons acting under color of state law. As will be discussed in more detail presently, Tran claims that he has been unlawfully denied adequate medical care by IDOC personnel, in violation of the Eighth Amendment. It appears from the record that Tran first entered IDOC custody in 2000. Between January 18, 2002, and June 24, 2008, Tran was incarcerated in the Menard Correctional Center ("Menard"), where he received medical treatment from Dr. Adrian D. Feinerman, Dr. Mikhail Magdel, and Dr. Lisa Gales. It appears that during Tran's incarceration in Menard, Tran was diagnosed as suffering from an inguinal hernia. Between June 25, 2008, and October 7, 2008, Tran was incarcerated in the Pontiac Correctional Center ("Pontiac"), where he received medical treatment

from Dr. Sylvia Mahone. Between October 8, 2008, and October 20, 2009, Tran was incarcerated in the Shawnee Correctional Center ("Shawnee"), where Tran received medical treatment from David, a physician working at Shawnee. On October 21, 2009, Tran was transferred to the Pinckneyville Correctional Center ("Pinckneyville"), where he received medical treatment from Dr. Olukunle Obadina. Currently, Tran again is incarcerated in Shawnee. By order entered February 10, 2011, the Court dismissed Obadina as a Defendant in this action by reason of Tran's failure to effect service of summons on Obadina. *See* Doc. 64. By order entered March 1, 2011, the Court dismissed Feinerman, Magdel, Gales, and Mahone as Defendants in this action by reason of Tran's failure to exhaust administrative remedies as to his claims against those parties, as is required under 42 U.S.C. § 1997e(a). *See* Doc. 66. In the same order the Court held that Tran could proceed on his claims against David during the period from October 9, 2008, until December 8, 2008. *See id*. David, the last remaining Defendant in this case, now seeks summary judgment as to Tran's Eighth Amendment claim against him.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, generally at any time until thirty days after the close of discovery in a case, "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a). The rule provides further that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." *Id*. Under Rule 56, "[a] party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the . . . presence of a genuine

dispute[.]" Fed. R. Civ. P. 56(c)(1)(A)-(B). The rule provides also that "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). With respect to affidavits and declarations, the rule provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In considering a summary judgment motion, a court must draw all reasonable inferences in the light most favorable to the non-moving party. *See Miller v. Herman*, 600 F.3d 726, 733 (7th Cir. 2010); *Smith v. Severn*, 129 F.3d 419, 425 (7th Cir. 1997). On summary judgment a court may not make credibility determinations or weigh the evidence, because these are tasks for a jury. *See Morfin v. City of E. Chicago*, 349 F.3d 989, 999 (7th Cir. 2003); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). "Our role is not to weigh the evidence in search of a preponderance as would a jury, but it is instead the more restrictive function of determining if the evidence in support of the verdict is *substantial*; a mere scintilla of supporting evidence will not suffice." *Futrell v. J.I. Case*, 38 F.3d 342, 346 (7th Cir. 1994) (emphasis in original). Finally, in evaluating a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010).

It is well settled, of course, that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). As the United States Court of Appeals for the Seventh Circuit has instructed,

"[t]he Eighth Amendment to the Constitution of the United States proscribes the infliction of 'cruel and unusual punishments.' The amendment imposes upon prison officials the duty to 'provide humane conditions of confinement,' including the obligation to provide medical care to those whom [they have] incarcerated[.]" *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A prisoner raising a claim for deliberate indifference to his or her serious medical needs must satisfy two requirements. The first requirement compels the prisoner to satisfy an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious[.]'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Thus, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities[.]'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The second requirement demands that the prisoner satisfy a subjective standard: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that amounts to "'deliberate indifference' to inmate health or safety[.]" *Id.* (quoting *Wilson*, 501 U.S. at 297). In the Seventh Circuit, "[a]n objectively serious medical need," the Seventh Circuit Court of Appeals has explained, "is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (quoting *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000)) (quotation omitted). Additionally, "[d]eliberate indifference 'is more than negligence and approaches intentional wrongdoing' . . . . [D]eliberate indifference is 'essentially a criminal recklessness standard, that is, ignoring a known risk.'" *Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006) (quoting *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998)).

In this case, as noted, Tran was first diagnosed as suffering from an inguinal hernia in 2006 while he was incarcerated in Menard. No doctors at Menard or Pontiac recommended surgery for Tran's condition. At David's deposition in this case on August 30, 2011, he explained in layman's terms what an inguinal hernia is:

> Well, inguinal hernia – an inguinal, means it's in the inguinal area, the groin. There's a defect at birth, there's a defect, there's an opening there in what we call the inguinal. That's supposed to close off for several weeks from birth and as the person grows into adult, adulthood, this defect sometimes with constant pressure can – can give way and open up, and when they do depending on the size, will – the abdominal contents or any fat can protrude there, and once it protrudes out, that's what we call inguinal hernia.

Doc. 82-2 (Deposition of Alfonso David) at 8. Thus, an inguinal hernia that is neither incarcerated nor strangulated can be manually reduced. It is undisputed that during the period relevant to this case, Tran's inguinal hernia was reducible. David saw Tran twice during the relevant time period, first on October 20, 2008, and again on November 17, 2008. David's notes from his October 2008 examination of Tran, which were read by David at his deposition in this case, state as follows:

> Q. . . . It's pages – they're Bates stamped. IDOC Bates stamps 332 to 344. Doctor, I think you already have those in the records you already brought with you, but do you recognize these documents?
> A. Yes. Yes, I do.
> Q. And these are the outpatient records from Shawnee Correctional Center.
> A. Yes.
> Q. Turning your attention to the first page which is IDOC 332, could you first confirm for me these are your notes?
> A. Dated October 20, yes.
> Q. So you wrote these notes?
> A. Yes.
> Q. Okay. Could you read your notes to me, please?
> A. Related right inguinal hernia times two years. ADL [activities of daily living] is not effected. O[bjective assessment], abdomen negative except for a golf size mass right groin that disappears with manipulation or – or when he lays down.

>Assessment, small easy reducible right inguinal hernia.  Plan, advise follow up PRN [*pro re nata*, that is, as necessary].

*Id*. at 11.  David also read his notes from the November 2008 examination of Tran:

>A.  November 17th, 2008, 1:30 p.m., S[ubjective assessment], right inguinal mass that goes to right scrotum about size of orange for years.  His activities of daily living are not compromised.  O[bjective assessment], orange fruit size right scrotum mass that disappears with slight manipulation, non tender, no redness, no swelling of tissues.  A[ssessment], is easily reducible right inguinal hernia.  P[lan], advise regard – regarding complications that strangulation and incarceration and report to health care unit as soon – ASAP, follow up PRN.

*Id*. at 14.  David also testified that he did not recommend surgery to repair Tran's hernia because the hernia was reducible, was neither incarcerated nor strangulated, and the risks of surgery outweighed the benefits:

>Q.  Could you describe what the risks of a surgery to remove a hernia are?
>A.  There are several.  One is infection, any surgical procedure can – you can have infection.  Another one would be they can develop hematoma, a large hematoma, another one would be they can endure – cause injury to the nerve in that area, another one would be recurrence of the hernia.

*Id*. at 15.  Tran's hernia was surgically repaired on October 26, 2010, while Tran was at Pinckneyville.  Dr. Kevin Barnett, a private physician to whom Tran was referred for surgery on Tran's hernia, explained at his deposition in this case on October 24, 2011, "I think in the referral note the reason for referral, it said that the patient [Tran] was complaining of some new discomfort." Doc. 82-6 (Deposition of Kevin Barnett) at 7.  Barnett's operative report concerning Tran explains also that Tran's hernia "was causing [Tran] discomfort and increasing in size.  I recommended repair.  I explained the risks of bleeding, infection, injury to cord or cord structures, injury to nerve or nerve structures, recurrence, postoperative pain, possibly chronic pain.  [Tran] understood these risks and wished to proceed."  Doc. 82-7 at 7.

For his part, Tran argues that David displayed deliberate indifference by: rescheduling two appointments with Tran; underestimating the size of Tran's hernia; ignoring Tran's complaints of pain and difficulty eating as a result of his hernia; failing to recommend a consultation by a surgeon with Tran; and failing to prescribe Tran pain medication and a hernia belt. It is apparent that the dispute between Tran and David is essentially a quarrel about the appropriateness and efficacy of the course of treatment selected by David, and in particular whether David should have ordered surgery for Tran. However, a prisoner's quarrels about the course of treatment selected by the prisoner's health care providers and the effectiveness of that treatment are not actionable as violations of the Eighth Amendment. "The Constitution is not a medical code that mandates specific medical treatment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (brackets omitted). Thus, for purposes of establishing an Eighth Amendment claim, "[m]edical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the Amendment's purview. Such matters are questions of tort, not constitutional law." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (quoting *Estelle*, 429 U.S. at 107) (brackets omitted). See also *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (when, "[a]t best, [a prisoner] alleges a disagreement with medical professionals about his needs," then the prisoner "does not state a cognizable Eighth Amendment claim under the deliberate indifference standard of *Estelle*[.]"); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."). Given that, as is clear from the record, Tran's inguinal hernia was neither incarcerated nor strangulated at the time relevant to this case, the Court cannot say that the treatment decisions at issue represented "such a substantial departure from accepted professional

judgment, practice, or standards as to demonstrate that [a medical provider] did not base the decision[s] on such a judgment." *Estate of Cole v. Fromm*, 94 F.3d 254, 262 (7th Cir. 1996).  Also, deliberate indifference is "something approaching a total unconcern for [a prisoner's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm[.]" *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992) (citations omitted).  This total disregard for a prisoner's safety is "the functional equivalent of wanting harm to come to the prisoner." *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991).  Drawing all reasonable inferences in Tran's favor, the evidence adduced by Tran shows, at most, possible negligence by David in treating Tran.  However, "[m]edical malpractice in the form of an incorrect diagnosis or improper treatment does not state an Eighth Amendment claim." *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997).  *See also Walker v. Peters*, 233 F.3d 494, 499 (7th Cir. 2000) ("A doctor might be careless . . . and this carelessness may constitute malpractice.  But malpractice alone is not enough to meet the constitutional standard."); *Snipes*, 95 F.3d at 590 ("[T]he Eighth Amendment is not a vehicle for bringing claims for medical malpractice.").  In this case, where the essential dispute is merely a difference of opinion between Tran and David about the proper course of treatment for Tran, and the evidence reflects at best mere negligence by David in his treatment of Tran, the Court will grant summary judgment for David.[1]

---

1. Because the Court finds that David's conduct does not rise to the level of deliberate indifference to Tran's serious medical need, it is unnecessary for the Court to address David's argument that he was not personally involved in a deprivation of Tran's constitutional rights, such as is necessary to establish liability under 42 U.S.C. § 1983.  *See Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.").  In an earlier order in this case, the Court struck the portion of David's summary judgment motion asserting a defense of qualified immunity as untimely.  *See* Doc. 84.

To conclude, David's motion for summary judgment (Doc. 82) is **GRANTED**. The Clerk of Court will enter judgment in this case.

**IT IS SO ORDERED.**

DATED:  May 10, 2012

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge